**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*
*Northern Division*

FILED ENTERED
LODGED RECEIVED
NOV 24 2026
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY DEPUTY

*Kertisha Dixon*
*Assistant United States Attorney*
*Kertisha.Dixon@usdoj.gov*

*Mailing Address:*
*36 S. Charles Street, 4th Floor*
*Baltimore, MD 21201*

*Office Location:*
*36 S. Charles Street, 4th Floor*
*Baltimore, MD 21201*

*DIRECT: 410-209-4803*
*MAIN: 410-209-4800*

October 8, 2026

**VIA ELECTRONIC MAIL**

Christopher J. Purpura
Law Office of Purpura & Purpura
606 Baltimore Avenue, Suite 301
Towson, Maryland 21204
cpurpura@purpuralaw.com

Re: *United States v. Najee Alexander Corbett*
Criminal No: JKB-26-132

Dear Counsel:

This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, Najee Alexander Corbett, hereinafter ("Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by **October 30, 2026, at 5:00 p.m.,** it will be deemed withdrawn. The terms of the Agreement are as follows:

Offenses of Conviction

1. The Defendant agrees to plead guilty to Count One of the Indictment, charging him with Wire Fraud, in violation of 18 U.S.C. § 1343, and Count Six of the Indictment, charging the Defendant with and Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A. The Defendant admits that the Defendant is, in fact, guilty of these offenses and will so advise the Court.

Elements of the Offenses

2. The elements of the offenses to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows: That on or about the dates alleged in the Indictment, in the District of Maryland, the Defendant committed the following acts:

Wire Fraud (Count One)

a. There was a scheme and artifice to defraud or to obtain money by means of materially false and fraudulent pretenses, representations, and promises, as charged in the Indictment;

b. That the defendant knowingly and willfully participated in the scheme or artifice to defraud, with knowledge of its fraudulent nature and with the specific intent to defraud; and

c. That for the purpose of executing the scheme, the defendant caused the use of interstate wires, as specified in the Indictment.

d. The Defendant knowingly devised or participated in a scheme to defraud someone by using false or fraudulent pretenses, representations, or promises.

Aggravated Identity Theft (Count Six)

a. The Defendant knowingly transferred, possessed, or used another person's means of identification;

b. Knowing that the means of identification belonged to another person and that the person was a real person;

c. without lawful authority; and

d. during and in relation to wire fraud outlined in the Indictment

Penalties

3. The maximum penalties provided by statute for the offenses to which the Defendant is pleading guilty are as follows:

| COUNT | STATUTE | MANDATORY MINIMUM IMPRISONMENT | MAXIMUM IMPRISONMENT | MAXIMUM SUPERVISED RELEASE | MAXIMUM FINE | SPECIAL ASSESSMENT |
|---|---|---|---|---|---|---|
| 1 | 18 U.S.C. § 1343 | n/a | 20 years | 3 years | $250,000 or twice the gross gain or loss from the offense | $100 |
| 6 | 18 U.S.C. § 1028A | 2 years consecutive to any other sentence | 2 years | 1 year | $250,000 | $100 |

a. Prison: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

b. Supervised Release: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant

returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

c. Restitution: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

d. Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

e. Forfeiture: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

f. Collection of Debts: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

## Waiver of Rights

4. The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

a. If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c. If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

d. The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

e. If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

g. If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

Advisory Sentencing Guidelines Apply

5. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

Factual and Advisory Guidelines Stipulation

6. This Office and the Defendant stipulate and agree to the Statement of Facts set forth in Attachment A, which is incorporated by reference herein. The parties further stipulate and agree to the following applicable Sentencing Guidelines:

Wire Fraud (Count One):

a. The base offense level for wire fraud is **7** pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 2B1.1(a)(1).

b. Pursuant to § 2B1.1(b)(1)(D), there is a **6-level** enhancement because the loss exceeds $40,000 but does not exceed $95,000. [Subtotal: 13].

c. This Office does not oppose a **2**-level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a), based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way.

d. Thus, the final anticipated adjusted offense level is **11**, before the application of the Aggravated Identity Theft guideline.

Aggravated Identity Theft (Count Six):

e. Pursuant to U.S.S.G. § 2B1.1(6), the guideline sentence is the term of imprisonment required by statute—twenty-four (24) months imprisonment consecutive to the sentence imposed in connection with Count One.

7. The Defendant reserves the right to argue at sentencing that a 2-level downward adjustment applies because the criteria set forth in U.S.S.G. § 4C1.1 (Adjustment for Certain Zero-

Point Offenders) have been met. This Office reserves the right to argue at sentencing that this downward adjustment does not apply.

8. There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

9. Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

## Obligations of the Parties

10. At the time of sentencing, this Office and the Defendant will jointly recommend that the Court impose a total sentence of 24 months' and one day imprisonment (24 months on Count six, followed by one day consecutive on Count 1) in the custody of the Bureau of Prisons, and that the recommended sentence is the appropriate disposition of this case taking into consideration the nature and circumstances of the offense, the Defendant's criminal history, and all of the other factors set forth in 18 U.S.C. § 3553(a). At the time of sentencing, this Office and the Defendant reserve the right to advocate for a reasonable period of supervised release, and/or fine considering any appropriate factors under 18 U.S.C. § 3553(a).

11. The parties reserve the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office or the Defendant deem relevant to sentencing, including the conduct that is the subject of any counts of the Indictment.

12. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

## Waiver of Appeal

13. In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's convictions, on any ground whatsoever. This waiver includes all right to appeal the Defendant's convictions on the ground that the statute(s) to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s), to the extent that such challenges legally can be waived.

b. The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of restitution, and term or condition of supervised release).

c. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

Forfeiture

14. The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offenses.

15. Specifically, but without limitation on the Government's right to forfeit all property subject to forfeiture as permitted by law, the Defendant agrees to forfeit to the United States all of the Defendant's right, title, and interest in the following items that the Defendant agrees constitute money, property, and/or assets derived from or obtained by the Defendant as a result of, or used to facilitate the commission of, the Defendant's illegal activities, specifically:

a. a money judgment in the amount of at least $71,304.62 in U.S. currency.

16. If specific direct or substitute assets are forfeited and liquidated, any net proceeds of the asset shall be applied to the money judgment.

17. The Defendant agrees to consent to the entry of orders of forfeiture for the property described herein and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2, and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding forfeiture during the change of plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

18. The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

19. The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas

corpus petition, or civil complaint. The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

Restitution

20. The Defendant agrees to the entry of a restitution order for the full amount of the victims' losses, which is **$71,304.62**. The Defendant agrees that pursuant to 18 U.S.C. §§ 3663 and 3663A and 3563(b)(2) and 3583(d), the Court may order restitution of the full amount of any actual, total loss caused by the offenses conduct set forth in the factual stipulation. The total amount of restitution shall be due immediately and shall be ordered to be paid forthwith. The Defendant agrees to make full restitution to all victims of his offenses as to all counts charged, whether or not the defendant enters a plea of guilty to such counts and whether or not such counts are dismissed pursuant to this agreement. Further, the Defendant agrees to pay restitution to any of Defendant's victims, for the entire scope of Defendant's criminal conduct, including but not limited to all matters included as relevant conduct. Any payment schedule imposed by the Court establishes only a minimum obligation. Defendant will make a good faith effort to pay any restitution. Regardless of Defendant's compliance, any payment schedule does not limit the United States' ability to collect additional amounts from Defendant through all available collection remedies at any time. The Defendant further agrees that the Defendant will fully disclose to this Office, the probation officer, and to the Court, subject to the penalty of perjury, all information (including but not limited to copies of all relevant bank and financial records) regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this Agreement, and this Office may seek to be relieved of its obligations under this Agreement.

Collection of Financial Obligations

21. The Defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report in order to evaluate the Defendant's ability to satisfy any financial obligation imposed by the Court. If restitution is not paid by the date of sentencing, in order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the Defendant agrees to disclose fully all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party. If restitution is not paid by the date of sentencing, the Defendant will promptly submit a completed financial statement to the United States Attorney's Office, in a form this Office prescribes and as it directs. The Defendant promises that any financial statement and disclosures the Defendant submits will be complete, accurate and truthful, and understands that any willful falsehood on the financial statement will be a separate crime and may be punished under 18 U.S.C.§ 1001 by an additional five years' incarceration and fine.

Defendant's Conduct Prior to Sentencing and Breach

22. Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

23. If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

Court Not a Party

24. The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation in this Agreement. The Court will determine the facts relevant to sentencing. The Court is not required to accept any recommendation or stipulation of the parties. The Court has the power to impose a sentence up to the maximum penalty allowed by law. If the Court makes sentencing findings different from those stipulated in this Agreement, or if the Court imposes any sentence up to the maximum allowed by statute, the Defendant will remain bound to fulfill all of the obligations under this Agreement. Neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

Entire Agreement

25. This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Kelly O. Hayes
United States Attorney

Kertisha Dixon
Special Assistant United States Attorney

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

11/24/26
Date

Najee Alexander Corbett
Defendant

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

11/24/26
Date

Christopher Purpura, Esq.
Counsel to Defendant

## ATTACHMENT A

## STIPULATION OF FACTS

*The undersigned parties stipulate and agree that that the following facts are true and accurate, and that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

### Background on SSA, SSI, and the Defendant's Employment with SSA

The Social Security Administration ("SSA") was an agency of the United States government that administered programs under the Social Security Act, Title 42, United States Code, Section 301 ("the Act"). SSA headquarters was located in Woodlawn, Maryland, in Baltimore County. Title XVI of the U.S. Social Security Act established SSA programs including Supplemental Security Income ("SSI"), which provided monthly cash payments to address the needs of individuals who had limited or no income; limited or no resources; and a disability, blindness, or were age 65 or older.

Najee Alexander Corbett ("the defendant") is a 38-year-old resident of Baltimore County, Maryland. From in and around July 19, 2020, through December 13, 2024, the defendant was employed by SSA as a customer service representative. As a customer service representative, the defendant was assigned a personal identification number ("PIN") to access sensitive SSA databases containing personally identifiable information of SSA benefit claimants. Employee use and access of these databases was recorded and documented by SSA's Audit Trail System ("ATS"). As a customer service representative, the defendant's job duties included analyzing claimants' benefit payment history; reviewing their information to determine ongoing eligibility for SSA benefits; conducting interviews; and answering questions from the public both in-person and via telephone. Beginning in or around October 2022, the defendant's assigned SSA work location was a field office in Baltimore City, Maryland.

### Wire Fraud and Identity Theft

Between in or about January 2023 through July 2024, the defendant devised a scheme to defraud SSA, the SSI program, and individual disability recipients. The scheme involved the defendant's use of his position as an SSA employee to unlawfully access SSA databases to change banking and payment information of two SSI recipients. Through this scheme, the defendant directed disability payments of more than $116,000 to the defendant's personal bank accounts.

Victim D.G.

D.G. is an adult male, born in 1989, who was diagnosed with organic, mental, mood, and affective disorders. In 2003 and 2012, D.G.'s mother applied for SSI benefits on his behalf. In or around February 2023, D.G.'s mother entered the SSA office in Baltimore City, where the defendant worked, to inquire about D.G.'s SSI disability benefits. Following D.G.'s mother's

inquiry, the defendant unlawfully accessed D.G.'s SSA disability records and changed D.G.'s bank account to a Bancorp/CHIME bank account created and controlled by the defendant. The defendant then accessed D.G.'s SSA record approximately 436 times between February 15, 2023, through July 24, 2024, including directing payments intended for D.G. into an account controlled by the defendant, for the defendant's personal benefit.

On March 1, 2023, the defendant directed a benefit payment of $820.00 intended for D.G. into the above-referenced Bancorp/CHIME bank account. On March 13, 2023, the defendant directed a benefit payment of $29,508.50 intended for D.G. into the same Bancorp/CHIME bank account. In total, the defendant acquired $70,390.62, in the name of D.G., by falsifying D.G.'s SSA record and personal bank account information.

On or about June 1, 2023, the defendant deleted all of D.G.'s bank account information from the SSA record and changed D.G.'s residential address to the defendant's residential address in Baltimore County, Maryland. On or about June 2, 2023, the defendant directed a U.S. Treasury check, in the name of D.G., in the amount of $40,062.12, to be mailed to the defendant's home. The defendant deposited the check into his personal USAA bank account on June 9, 2023.

The defendant also conducted the following unauthorized actions for victim D.G. in the SSA database:

- changed D.G.'s SSI benefit eligibility date to award back pay to the D.G.'s SSA record; and

- submitted a claim for back pay in D.G.'s name.

Victim D.D.

D.D. is an adult female, born in 1957, who was diagnosed with multiple mental health disorders. In or around January 2023, with assistance from family, D.D. entered the SSA office in Baltimore City to inquire about receiving SSI disability payments. D.D. was interviewed by the defendant.

Following the defendant's interview of D.D., the defendant unlawfully accessed D.D.'s SSA disability records. Between January 3, 2023, through April 21, 2023., the defendant conducted approximately 207 transactions in D.D.'s SSA record, including directing payments intended for D.D. into accounts controlled by the defendant, for the defendant's personal benefit.

In March 2023, the defendant changed D.D.'s SSI eligibility date to award back pay. The defendant then changed D.D.'s bank account information in the SSA database to the defendant's MVB/Credit Karma bank account. The defendant caused a back payment in the amount of $45,233.00, in D.D.'s name, to be deposited into the defendant's MVB/Credit Karma bank account by wire transfer on March 23, 2023. On March 24, 2023, the defendant transferred $45,233.00. from his MVB bank account to his USAA bank account. On March 27, 2023, the defendant caused a check with the memo line "D.D." in the amount of $45,233.00 to be sent back to SSA.

On March 29, 2023, the defendant caused a disability payment, in the name of victim D.D. in the amount of $914.00, to be deposited into the defendant's MVB/Credit Karma bank account.

The defendant also accessed the SSA database to modify D.D.'s SSA record to reflect that D.D. was deceased.

The defendant did not have lawful authority to use the means of identification of D.G. or D.D. to modify their SSA records or conduct the financial transactions outlined above. The defendant used the unlawfully obtained SSI funds to pay for travel, home improvement projects, purchase a motorcycle, and other personal expenses.

In total, the defendant fraudulently obtained $116,537.62 in SSI disability payments in D.D. and D.G.'s names. The defendant retained $71,304.62 of those funds, after returning the $45,233 he obtained in D.D.'s name.

SO STIPULATED:

11/24/26
Date

Najee Alexander Corbett
Defendant

11/24/26
Date

Christopher Purpura, Esq.
Counsel to Defendant

11-24-26
Date

Kertisha Dixon
Kertisha Dixon
Special Assistant United States Attorney

Rev. August 2018